DR. LUIS E. GONZÁLEZ SALDAÑA, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, MANUEL A. MOREDA, JUDGE, Respondent.

No. C-65-18.    Decided June 3, 1965.

*Ángel Viera Martínez* and *Jorge Luis Ortiz Viera* for petitioner. *Luis F. Sánchez Vilella* for defendant.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

We issued a writ of certiorari to review the following Order of the Superior Court, San Juan Part:

"The plaintiff not having exhausted the administrative remedies provided by the Act of the University of Puerto Rico, the

motion to dismiss in this case is sustained. Let it be notified. San Juan, Puerto Rico, January 21, 1965."

On May 6, 1964 petitioner Dr. Luis E. González Saldaña filed a petition for mandamus in the Superior Court against the Chancellor of the University, and to that effect he alleged that he was a permanent employee of the University of Puerto Rico as assistant professor attached to the Institute of Forensic Medicine, which permanence he had acquired since July 1, 1960; that his duties consisted in the supervision of the forensic medicine work and forensic pathology, for which he specialized at Harvard University and at Maryland University, and he also possessed other certificates of the American Board of Pathology in anatomic and forensic pathology. That in said capacity and with the aforementioned duties, petitioner executed a contract with the Secretary of Justice and with the approval of the Chancellor of the University, to perform the functions of a forensic pathologist in the Department of Justice for the supervision of medicolegal autopsies, to appear as expert forensic doctor in the courts, and to act as adviser to the prosecuting attorneys, for a monthly compensation of $335, which contract was to become effective from July 1, 1960 to June 30, 1961 and that it would be reviewed at the end of each fiscal year on the date of its expiration. That as a result of systematic official persecution without just cause or reason, the Head of the Department of Pathology of the School of Medicine of the University, Dr. Raúl A. Marcial, removed him, without authority therefor, from his functions in the permanent position in the Institute of Forensic Medicine, and transferred him to the School of Medicine on February 5, 1962, thus depriving him of the opportunity, at the proper time, of having his contract renewed with the Department of Justice, as it was actually not renewed after June 30, 1962. That later, the head of the Department of Pathology of the School of Medicine, without authority therefor, transferred the peti-

tioner to the Institute of Forensic Medicine in charge of the medico-clinical autopsies of the Municipal Hospital in Río Piedras, and on June 10, 1963, without any justification therefor, he transferred defendant again to the School of Medicine in Puerta de Tierra.

Petitioner further alleged that on June 13, 1963, arbitrarily and without legal authority therefor, without preferment of charges and without cause therefor, and in violation of his civil rights, Dr. Marcial relieved him wholly from the functions of his position and from that date until February 26, 1964, petitioner was deprived of rendering his professional services to the government of the Commonwealth of Puerto Rico, but he was receiving the salary, over $9,000, without being able, as a result of said action, to render the corresponding services to the government. That on February 25, 1964 the Dean of the School of Medicine, Dr. Nigaglioni, ordered petitioner to appear before Dr. Raúl Marcial, and the latter assigned him to the division of neurology of the department of medicine of the University Hospital, under certain limitations and conditions, to perform work appropriate for a resident, in violation of the rights of his permanent position, and he has been deprived from working in his specialization. That petitioner reported to the division of neurology to perform the duties imposed on him without waiving his right to occupy his permanent position as assistant professor attached to the Institute of Forensic Medicine, in his work of supervision, for which he possesses his specialization.

Lastly, he alleged that before being incorporated to the division of neurology of the University Hospital petitioner requested the Chancellor of the University to reinstate him in his permanent position as assistant professor connected with the Institute of Forensic Medicine, in functions of supervision, and that defendant has not done it yet. That petitioner has no other available remedy to protect his rights but

the petition for mandamus, and he prays that an order be entered directing the Chancellor of the University to reinstate him in his permanent professorship. Naturally, the petition was verified.

Together with the petition for mandamus petitioner filed (1) certificate of the Office of Personnel of the University to the effect that he permanently discharges the position of assistant professor, Institute of Forensic Medicine since July 1, 1960; (2) copy of the contract for professional services with the Department of Justice with a monthly salary of $335 for services after working hours in the professorship; (3) letter of the Secretary of Justice dated May 31, 1962 addressed to petitioner informing him that since he was not rendering services in the Institute of Forensic Medicine, his contract would not be renewed starting June 30, 1962; (4) letters of June 10, 1963 of Dr. Raúl Marcial Rojas to petitioner transferring him within the Department of Pathology of the School of Medicine, from the Municipal Hospital in Río Piedras to teach in the School of Medicine in Puerta de Tierra; (5) letter of June 13, 1963 of Dr. Marcial Rojas relieving petitioner from his obligations within the Department of Pathology until his case was considered and decided by the Chancellor of the University.

The trial court entered an order against the Chancellor to show cause why the mandamus requested should not be granted. The Chancellor appeared and moved for the dismissal of the action and stated that pursuant to the Act of the University, the University Board "shall decide appeals established by the professors and the students, or any of them, from the acts and decisions of any dean, faculty or member of the teaching, technical, or administrative personnel"; and pursuant to said Act the Superior Educational Council "shall decide appeals that may be taken from acts or decisions of the Chancellor, Vice Chancellor, or any of the University boards." In his motion to dismiss the Chancellor

adduced that the complaint did not allege that petitioner had appealed before the University Board from the actions of Dr. Marcial Rojas, or before the Superior Educational Council from the actions of the Chancellor. That, hence, he had not exhausted the administrative remedies. For these reasons he requested the dismissal of the petition for mandamus. The motion to dismiss having been heard the order copied at the beginning of this opinion was entered.

Before deciding the question raised the trial court had before it the following documents related to the facts set forth in the petition. (1) a letter of May 28, 1963 of the Dean of the School of Medicine addressed to the Chancellor, attaching another of Dr. Marcial Rojas in relation to petitioner's case. The Dean recommends the removal of petitioner from his position until the charges preferred against him be investigated by the Office of the Chancellor, and that he based his recommendation on the necessity of separating Dr. González from the operation of the Department of Pathology and the Institute of Forensic Medicine, for the good of said organizations. (2) Memorandum of June 19, 1963 addressed to the Office of Chancellor signed by a dean, in which it is stated: "Re: I verbally authorized Dr. Marcial to temporarily suspend Dr. González Saldaña from his employment, pending further decision of the Chancellor." (3) A letter of August 19, 1963 from the Dean of the School of Medicine, Dr. Nigaglioni, addressed to the Chancellor, where he stated that Dr. Marcial Rojas considered it appropriate to submit a series of charges to Dr. Vivas, dean at that time, for the purpose of removing Dr. González from the department; that after interviewing members of the Department of Pathology and Dr. González he had reached the conclusion that it was impossible to reinstate Dr. González in his work in the Department of Pathology or in the Institute of Forensic Medicine, and that he thought that the problem was a serious emotional disorder. That Dr. González refused to

resign his position and that he suspected that he (Dr. González Saldaña) would resort to "legal proceedings in the event he is separated from the School." Notwithstanding Dr. González Saldaña was relieved from his obligations in the Department since June 13, 1963, he was receiving his salary and that this was "a drainage in our economy." The dean's letter ended expressing his appreciation for the opinion of the Chancellor on this matter. (4) Letter dated January 3, 1964 from Mr. Luis F. Sánchez Vilella addressed to the Chancellor where he reports on the result of the investigation of the charges intended to be brought against Dr. Luis E. González Saldaña and he expresses his opinion on the situation.

On February 20, 1964 the Chancellor addressed a letter to Dr. Raúl Marcial Rojas stating that his opinion was that Dr. González Saldaña should be given professional work in the Department of Pathology.[1]

There is in the record, and it was also brought before the court, an official certificate of the Permanent Secretary of the Superior Educational Council as to the "faculty of the School of Medicine as members of the Faculty," where it is stated that the faculty of Río Piedras is constituted by the faculty of Río Piedras, that of Mayagüez by the faculty of Mayagüez and that of San Juan by the faculty of the Schools of Medicine and Odontology; that the faculty of Río Piedras cannot legislate as to matters incumbent on the

---

[1] The documents described above were furnished to petitioner by order of the court in another suit on these same facts. They were partly reproduced and included in an elaborate memorandum of law submitted by the petitioner to the trial court on the motion to dismiss.

It must not be understood that we credit them as all the facts or the whole truth of the facts on the merits of the matter, something which will be determined at the proper time. They are considered, and the court should have weighed them so, as to the contention and the judgment of dismissal for lack of sufficient administrative intervention. Even if Mr. Sánchez Vilella's letter was apparently revealed, we prefer not to reveal its content.

School of Medicine; "that it has always operated that way, that is, actually, the faculty of Río Piedras has never inter- vened with the School of Medicine or the School of Odon- tology."

In compliance with the certificate issued by the Perma- nent Secretary of the Superior Educational Council, there was no occasion for administrative intervention of the Uni- versity Board in the matter in litigation. Actually, the Act of the Unversity, Act No. 135 of May 7, 1942 (Sess. Laws, p. 762), creates a University Board of the colleges situated in Río Piedras, and a Special University Board of the college of Agriculture and Mechanical Engineering in Mayagüez.

The University Board is constituted by the Chancellor, who is the chairman, a body of deans, and a representative of the faculty of University schools in Río Piedras, and it shall act as an advisory body for the Chancellor. It exercises other powers specifically provided by law among which the intervention in the removal or separation from employment is not mentioned. Although it is provided that it shall decide appeals established by the professors and the students, or any of them, from the acts and decisions of any dean, fac- ulty or member of the teaching, technical or administrative personnel, we do not see how it can pass on the removal from his functions of a professor with permanent status, since said power to remove has not been granted to the deans or the faculty or any other member of the teaching, technical or administrative personnel, except to the Chancel- lor himself.—Act No. 135, *supra* §§ 10, 11.—Furthermore, the facts show that this matter was under the consideration of the Chancellor himself.

In addition to the foregoing the above-mentioned certifi- cate shows that the University Board of Río Piedras as such, aside from the Office of Chancellor, has no interven- tion or interference in the operation of the School of Medi- cine. The Act provides that by "university faculty of Río

Piedras" shall be understood the deans and the teaching and technical personnel of the colleges and faculties of the University of Puerto Rico situated in Río Piedras; and that by "teaching personnel" shall be understood the members of the university faculty; and by "faculty" shall be understood the university teaching personnel connected with a college or an academic division of a college.—Act No. 135, § 30.

■ Section 9 of the Act provides that the Chancellor shall appoint, subject to the approval of the Superior Educational Council, the deans of the colleges and faculties and certain other personnel, and in consultation with the University Board, he shall appoint the teaching, technical, and administrative personnel and all the other officials and employees. The Chancellor has the full authority to supervise all the University personnel and the teaching, technical and administrative functions of the institution in all its colleges, schools, faculties, and dependencies.

The Act created the permanency of personnel positions and provides in § 16, as amended by Act No. 334 of May 13, 1949 (Sess. Laws, p. 1020), the following: "A member of the University personnel whose appointment has a permanent character, may not be removed without the previous preferment of charges and an opportunity for defense. However, the Chancellor may, should the interest of the University so require, suspend from office and stop the salary of any member of the University personnel until the proper charges are heard."

More particularly with respect to petitioner, Act No. 114 of June 26, 1958 (Sess. Laws, p. 276), amending Act No. 206 of May 15, 1943 (Sess. Laws, p. 730), established the Institute of Forensic Medicine, attached to the School of Medicine and granted the Chancellor the authority to appoint its personnel on recommendation of the Dean of the School of Medicine, subject to the standards and procedure governing appointments in the University of Puerto Rico. The Director

of the Institute is the professor of forensic medicine of the University of Puerto Rico who is in charge of the training of such physicians as may desire to take postgraduate studies in legal and forensic medicine.

■ Pursuant to the legal provisions considered, it is evident that the authority to remove petitioner from his permanent position in the Institute of Forensic Medicine is vested only on the Chancellor, subsequent to the preferment of charges and an opportunity for defense. A decision of the Chancellor removing a permanent professor from his position is appealable before the Superior Educational Council.—Act No. 135, *supra*, § 5.

■ The record of the case, however, does not present a course of action directed in that manner. The petitioner, according to the facts presented by him under oath, which must be accepted as true to the effect of the motion to dismiss, is not permitted to enjoy the prerogatives of his professorship, which is a highly specialized one, under the rules of the law creating the Institute. On the other hand, and although that situation existed for over three years, no charges are brought against him either to dispossess him of his professorship, in order to have a decision of the Chancellor from which petitioner could appeal before the Superior Educational Council. The administrative treatment of the problem by his superiors at different levels appears rather confusing. Charges are mentioned, which were never preferred either for lack of sufficient cause or justification, and the record reveals that there is basis to believe that the Chancellor could have deemed it so, or for fear that he would resort to "legal proceedings" in case he were removed from the School. Subsequent to the Chancellor's decision on February 20, 1964 that petitioner be entrusted with professional work in the Department of Pathology, and having sent him on February 25 to the division of neurology of the Depart-

ment of Medicine of the University Hospital, petitioner requested the Chancellor once more to reinstate him in the Institute of Forensic Medicine, to which the Chancellor has not yet consented, and without any charges having been preferred against him to remove him definitively from the Institute.

■ In view of that long administrative history it cannot be said that petitioner has gone to court without exhausting said sphere of action or without the administrative knowledge of the matter. In a situation like this, in which petitioner's right is hemmed in by the to-and-fro of the administrative procedure which does not decide definitively, despite the clear mandate of the law which precludes the removal from office without the preferment of charges, the use of the prerogative of mandamus for the rescue of his right at law lies. *Núñez* v. *Benítez, Chancellor*, 65 P.R.R. 812, 815 (1946); *Pérez* v. *Garrido, Commissioner*, 48 P.R.R. 445, 461 (1935); *Gil* v. *Chardón*, 41 P.R.R. 208, 215 (1930).

■ There are situations in which by express provision of law courts are precluded from taking cognizance of certain litigations until a decision has been entered therefor in the administrative sphere. Typical cases, as for example, suits for unfair labor practices, reasonable rents, labor accidents, tax suits and others of the kind. In the case at bar we are not confronting one of those situations. Although it is true that there are known judicial rules to the effect that it is preferable to exhaust the administrative action before resorting to the judicial action since it is desirable for a better and easier ordering in the disposal of conflicts of this nature, the rule is one of convenience compatible with justice, and it is not so inflexible as to entail the frustration of a right or the denial of a remedy.

■ It seems to us, according to the circumstances in the record, that that is the result which would be achieved by

closing the doors of the court to petitioner. He would remain indefinitely in the same situation he is now: without the opportunity to discharge his professorship for which he qualified especially well, and without an administrative decision on the merits subsequent to a proceeding on preferment of charges with the right to defend himself and which would deliver him from the charges in detriment of his professional prestige or which will permit him, at the proper time, the judicial review in the ordinary manner. For that reason, the judicial intervention by the extraordinary means of mandamus is in order.

The order sustaining the motion to dismiss will be set aside, and the record remanded with instructions to order the Chancellor, pursuant to Rule 55, to present an answer on the merits of the petition for mandamus.